**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NANSI NELSON and BARRY NELSON,

Plaintiff,

- v -

ULSTER COUNTY, LEWIS KIRSCHNER
*in his official capacity as Ulster County Treasurer*,
NINA POSTUPACK, *in her official capacity as*
*Ulster County Clerk*, WVD 2906209 LLC,
*a New York Corporation*,

Defendants.

Civ. No. 1:06-CV- 1057
(GLS/RFT)
(Lead Case)

NANSI NELSON and BARRY NELSON,

Plaintiff and Counter Defendants,

- v -

ULSTER COUNTY, LEWIS KIRSCHNER
*in his official capacity as Ulster County Treasurer*,
NINA POSTUPACK, *in her official capacity as*
*Ulster County Clerk*,

Defendants and Counter Claimants,

and WVD 290620 LLC, *a New York Corporation*,
Defendants.

Civ. No. 1:06-CV- 1058
(GLS/RFT)
(Related Case)

**APPEARANCES:**                                      **OF COUNSEL:**

OFFICE OF JOHN F. HECTOR                              JOHN F. HECTOR, ESQ.
*Attorney for Plaintiffs*
326 Wall Street
Kingston, New York 12401

CORBALLY, GARTLAND AND RAPPLEYEA LLP                  JON H. ADAMS, ESQ.
*Attorney for Defendant WVD*
35 Market Street
Poughkeepsie, New York 12601

MAYNARD, O'CONNOR and SMITH                           MICHAEL CATALINOTTO, ESQ.
*Attorney for Ulster County Defendants*
Route 9W, P.O. Box 180
Saugerties, New York 12477

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION and ORDER</u>

Presently there are two Motions before this Court.[1]  Initiating this maelstrom of Motions are

the  Nelsons who filed a Motion to Amend their Complaint to add parties and causes of action.  Dkt.

Nos. 9, Pls.' Mot. to Amend, dated June 29, 2007, & 11, Red-lined Proposed  First. Am. Compl.[2]

In addition to filing a very truncated opposition to Nelsons' Motion to Amend, WVD filed a Cross

Motion to Disqualify Nelsons' attorney, John Hector.  Dkt. No. 10,  WVD's Cross-Mot., dated July

10, 2007.[3]  For the reason stated below, Nelsons' Motion to Amend is **granted** and WVD's Cross

Motion is **denied**.

## I.  BACKGROUND

Because the  primary  subject  for  both  the  Motion  to  Amend  and  the  Cross  Motion  to

Disqualify are related, for purposes of continuity, we will discuss the facts concomitantly.

### A.  Facts to Support the Proposed Amended Complaint

The Nelsons owned a single family home in Ulster County but have resided in New York

City and now reside in Pittsburgh,  Pennsylvania.  The County foreclosed on the property and then

sold the property to WVD in April or May 2006.  In August 2006, the Nelsons commenced a 42

---

[1] These two Motions are docketed in case number 06-CV-1057, the lead case, although the Motion to Amend Plaintiffs' Complaint pertains to the Complaint filed in case number 06-CV-1058.

[2] Accompanying the Notice of Motion to Amend the Complaint are (1) Memorandum of Law (Dkt. No. 9-2), (2) Affidavit of Nansi Nelson, dated June 26, 2007 (Dkt. No. 9-4), and (3) selected pages of the deposition of Mark Delacorte.  Dkt. No. 9.

[3] Supporting WVD's Opposition and Cross Motion are (1) Affidavit of Mark Delacorte, dated July 11, 2007 (Dkt. No. 10-3), and (2) Affirmation of Jon Holden Adams, Esq., dated July 10, 2007 (Dkt. No. 10-2).  There is no Memorandum of Law.  Dkt. No. 10.  The Ulster County Defendants have not filed any opposition to either the Motion to Amend or Cross Motion nor filed a motion of their own accord.

U.S.C. § 1983 civil rights action alleging a violation of their due process rights as found in the Fourteenth Amendment, further contending that they did not receive adequate notice of the tax foreclosure, as the foreclosure notice was returned to Ulster County "undelivered as addressed." *See generally* Civ. No. 06-CV-1058, Dkt. No. 1, Compl; *see also* Dkt. No. 12-2, N. Nelson's Aff., dated July 14, 2007, at ¶ 3. The Nelsons further alleged in the Complaint that weeks prior to the tax auction of this property, they "moved most of their personal belongings to the subject property." Compl. at ¶ 28.

Although the locks were changed on the property, an agreement was struck between the Nelsons and WVD that no legal action would be taken to evict the Nelsons and their status quo as to their personal property would be maintained. Dkt. No. 12-2 at ¶ 2.[4] Sometime in December 2006, the Nelsons heard that WVD was making a claim to their personal property, so in the first week in January 2007, they had the locks changed and a key was given to their attorney, John Hector. *Id*.; Dkt. No. 12-3, John Hector, Esq., Aff., dated July 10, 2007, at ¶ 5. Upon information and belief, Mrs. Nelson avers that no one entered the single family house until she did on May 10, 2007. Dkt. No. 12-2, at ¶ 2. Upon entering the house, she discovered, for the first time, that their personal property had been removed and was now missing. *Id*. at ¶¶ 2 & 4; Dkt. Nos. 9-4, N. Nelson Aff., dated June 26, 2007, at ¶ 4, & 12-3 at ¶ 7.

Mark Delacorte, a principal with WVD, was deposed on May 9, 2007. During his deposition, Delacorte acknowledged that he, Daniel Winn, and Joseph Vivianni, removed the Nelsons' personal property from the subject property with some of the Nelsons' personalties being

---

[4] The Nelsons' attorney, John Hector, sent a letter in July 2006, to WVD's attorney indicating that the Nelsons' claimed ownership of the subject property and its contents. Dkt. No. 12-3, John Hector, Esq., Aff., dated July 18, 2007, at ¶ 2. Hector avers that Jon Adams, WVD's attorney, assured him "that the status quo would be maintained without legal action." *Id*. at ¶ 3.

placed in storage while others were taken to the dump.  Dkt. No. 9-4 at ¶ 5.  Vivianni was recently

deposed and confirmed Delacorte's testimony, but further adding that they removed the personal

property during the summer of 2006.  Dkt. No. 12-2 at ¶ 5; *see* Proposed Am. Compl. at ¶¶ 7-10.[5]

Based upon her observations and key testimony of Delacorte and Vivianni, the Nelsons wish to

amend their Complaint to add as parties to the action Mark Delacorte, Daniel Winn, and Joseph

Vivianni, as individuals and in their capacity as agents for WVD, and to plead against them and

WVD causes of action for conversion (Third Claim) and intentional and/or negligent infliction of

emotional distress (Fourth Claim).  *See* Proposed Am. Compl.

## B.  Facts related to the Cross Motion to Disqualify Plaintiffs' Counsel

The basis for WVD's Cross Motion is summarized by Mark Delacorte as follows:

[o]n May 10, 2007, it was discovered that John Hector had broken into the between
December 30, 200[6] and May 10, 2007, removed the lock installed by WVD and
installed his own lock.  On May 10, I installed a second lock on the storm door so

---

[5]  Mark Delacorte's testimony reads, in part, as follows:

Q:       Have you ever removed anything from the house?

A.       Yes

Q:       What have you removed?

A.       We disposed of a lot of garbage and papers and we sorted through some things and took out some things that
         weren't garbage and put them into storage.

Q.       Who did that other than yourself?

A.       The other two partners and I.

Q:       Prior to the first week of July of '06?

A.       It could have been prior to — sometime before the second week in July of '06.
Dkt. No. 9, Ex. Mark Delacorte's Dep. Tr., dated May 9, 2007, at pp. 15 & 16.

         Hector asseverates that both Delacorte and Vivianni testified that they had not entered the subject property
during 2007.  Dkt. No. 12-3 at ¶ 8.  At the moment of this Decision and Order, the parties did not have a copy of
Vivianni's deposition transcript.

that neither Hector nor WVD could access the property without the other present. On May 23rd, Dan Winn, a member of WVD, was driving by the property and saw a car parked at the property. John Hector and Fred Bell had used bolt cutters to remove the lock on the storm door, the lock installed by me on May 10th. Winn discovered Hector and Bell inside the property unpacking boxes. Hector told Winn he would have him arrested if he did not leave.

Dkt. No. 10-3, Mark Delacorte Aff., dated July 11, 2007, at ¶ 6.

Refuting the supposition of Delacorte's Affidavit, Hector avers that

I had no access to the house in 2006, the period in which it is alleged, and acknowledged, that the property was converted. I received a key from the locksmith on January 5, 2007. Thereafter I did not use the key for access, or anyone else access, until May 10, 2007, the date on which Mrs. Nelson discovered that the items of her property were missing. Mr. Delacorte's assertion that I broke into the house and changed the lock between December 30 and May 10, 2007, is patently false.

Dkt. No. 12-3, Hector Aff. at ¶ 9.

Ostensibly these two contradictory Affidavits contextualize the Cross Motion.

## II. DISCUSSION

### A. Motion to Amend

FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)). District courts are vested with broad discretion to grant a party leave to amend the pleadings. *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). "The party opposing a motion for leave to amend has the burden of establishing that

-5-

granting such leave would be unduly prejudicial." *New York v. Panex Indus., Inc.*, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997) (citing *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996)); *see also Lamont v. Frank Soup Bowl*, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (citations omitted).  This requires the non-movant to "do more than simply claim to be prejudiced." *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 185 (E.D. Pa. 1991).

In challenging Nelsons' Motion to Amend, WVD relies solely upon the Motion being untimely and prejudicial.

### 1. Prejudice and Timing

In determining what constitutes prejudice from the amendment of a pleading, courts within the Second Circuit generally consider "whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Courts will further consider whether the opponent was otherwise on notice of the new claim, and whether that claim derives from the same facts set forth in the original pleading.  *See, e.g.*, *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986); *Tokio Marine & Fire Ins. Co. v. Employers Ins.*, 786 F.2d 101, 103 (2d Cir. 1986).

Where the motion to amend is made after an "inordinate delay," a court has the discretion to deny leave of that amendment.  *Travelers Indem. Co. v. Gosline*, 2003 WL 21230376, at *3 (N.D.N.Y. May 27, 2003) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

In order to deny a motion to amend on the ground of delay, said ground must be accompanied by either bad faith or undue prejudice. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993; *see also United States v. Cont'l Illinois Nat'l Bank*, 899 F.2d 1248, 1254 (2d Cir. 1989) (delay alone is an insufficient ground to deny a motion to amend). However, "the longer the period of an unexplained delay, the less will be required of the nonmoving party" to show undue prejudice. *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) ("The proper standard is one that balances the length of the delay against the resulting prejudice."). For example, if said amendment causes an undue prejudice by requiring additional discovery or unnecessarily complicates the litigation, the motion to amend may be denied. *Kovian v. Fulton County Nat'l Bank and Trust Co.*, 1992 WL 106814, at *2 (N.D.N.Y. May 13, 1992).

As to the Motion to Amend, WVD's edentulated effort to convince this Court that the Motion should not be granted is more of a concession than a challenge. Its aphoristic gainsay of the Motion is comprised of being "untimely and prejudicial." Dkt. No. 10-2, Adams Aff. at ¶ 3. Notwithstanding this anemic opposition, the Court will analyze the Motion.

The well-timed trek of filing this Motion is very basic and straightforward. The Nelsons asserted in their Complaint that weeks prior to the tax auction they moved personal belongings into the subject property. Civ. Case No. 06-CV-1058, Dkt. No. 1, Compl. at ¶ 28. Such allegation within the Complaint notifies all that more than real property is at stake in this case. As an integral part of their Motion to Amend, Mrs. Nelson avers that not until her entry upon the subject property did she discover that her personal property had been removed, notwithstanding WVD's representations that they would not remove their personal property.[6] Through their depositions, WVD's agents,

---

[6] Apparently, Mrs. Nelson testified at her deposition in May 2007 that she did not have access to the subject property since 2005. Dkt. No. 10-2, Adams Aff. at ¶ 6; *see infra* note 4.

Delacorte and Vivianni, confirmed that they and another removed the Nelsons' property, storing some and discarding others, in the summer of 2006. Upon the Nelsons' Request, this Court granted them license to file this Motion to Amend and said Motion was filed within weeks of such permission. Text Order, dated June 13, 2007. Rather than being tardy, this is a peculiarly expeditious Motion, especially considering when certain facts were disclosed through discovery.

As stated above, the Nelsons desire to add three new parties to this action and two common law causes of action (conversion and intentional/negligent infliction of emotional distress). WVD does not complain that the proposed new facts and the elements of these two causes of action and the addition of new parties fail to withstand a FED. R. CIV. P. 12(b)(6) motion to dismiss nor indicate how they may be futile in other respects.

Conversion is the unauthorized exercise of dominion and control over specifically identified property which ultimately trespasses upon an owner's rights. *Hoffman v. Unterberg*, 9 A.D.3d 386, 388 (N.Y. App. Div. 2d Dep't 2004); *Bright View Trading Co., Inc. v. Park*, 2004 WL 2071976, at *8 (S.D.N.Y. Sept. 16, 2004) (quoting *State of New York v. Seventh Regiment Fund*, 98 N.Y.2d 249, 259 (2002)); *see also Farkas v. Farkas*, 168 F.3d 638 (2d Cir. 1999) (citing *Gen. Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125 (N.Y. Ct. App. 1966) (discussing statute of limitations on conversion actions)). This cause of action is primarily concerned with right of possession and not title, *Pierpoint v. Hoyt*, 260 N.Y. 26, 29 (N.Y. Ct. App. 1932), of tangible personal property, *Roemer & Featherstonhaugh, P.C., v. Featherstonaugh*, 267 A.D.2d. 697 (N.Y. App. Div. 3d Dep't 1999). *See also Barrett v. Toroyan*, 28 A.D.3d 331, 333 (N.Y. App. Div. 1st Dep't 2006). "Conversion encompasses both wrongful takings and wrongful detention." *Bright View Trading Co., Inc. v. Park*, 2004 WL 2071976, at *9. Elementally, a plaintiff is required to establish (1) the defendant's intent

to exercise control over a specific property, (2) interference with that property to the exclusion of an owner-plaintiff's rights, and (3) a right of possession in the owner-plaintiff.  2 N.Y. PATTERN JURY INSTRUCTION § 3:10.  Moreover, officers and agents of a corporation may be personally liable for their own acts that may bring about the conversion of a third party's property.  *Shimamoto v. S&F Warehouses, Inc.*, 257 A.D.2d 334, 340 (N.Y. App. Div. 1st Div. 1999) (citing  *Ingram v. Machel & Jr. Auto Repair, Inc.*, 148 A.D.2d 324 (N.Y. App. Div. 1st Div. 1989)).  The Nelsons' proposed amendments state a cause of action of conversion against Delacorte, Winn, and Vivianni.

In order to plead a cause of action for infliction of emotional distress it must be alleged that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another."  *Fischer v. Maloney*, 43 N.Y.2d 553, 557 (N.Y. Ct. App. 1978) (cited in *Garland v. Herrin*, 724 F.2d 16, 18 (2d Cir. 1983)); N.Y. PATTERN JURY INSTRUCTION at § 3:6.  By a thin reed margin, the Nelsons barely plead this cause of action.  What gives us slight pause is that it appears less than certain that the proposed facts rise to the level of extreme and outrageous.  Without more from WVD, at this juncture of the litigation, this Court will not look beyond the pale of this proposed Amended Complaint to determine whether the Nelsons cannot plead any set of facts to establish these elements.

Lastly, as to the claim of prejudice, WVD remarks that more discovery will have to ensue.  Mrs. Nelson and maybe others may need to be re-deposed.  Additional discovery can be a basis for a finding of prejudice but not in our case.  Yet, the expenditure of additional resources will be minimal and discovery will be a minor concession in order to go forward with these new causes of action.  Thus, WVD has failed to establish undue prejudice and the Nelsons' proposed joinder of parties and amendments to their Complaint survive.

### **B.  Cross Motion to Disqualify John Hector, Esq**.

We noted above the factual contentions regarding this Cross Motion to Disqualify the Nelsons' attorney, John Hector.  *See supra* Part I.B.  It is WVD's position that Hector is now on the horns of a dilemma insofar as he may have to serve in this case in the dual roles of a witness and an advocate.  With scarcely any analysis, WVD raises the applicability of New York's Discipline Rule, DR 5-102, - an attorney "cannot be both an advocate and a witness at the same time for a party" - and disclaims that such dual role "would be highly prejudicial to [it]."  Dkt. No. 10-2 at ¶¶ 11 & 12.

The framework for the advocate-witness rule is found in Disciplinary Rule 5-102[b] which fundamentally states in part

> [i]f after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer . . . may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer . . . must withdraw acting as an advocate before the tribunal.

N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.21[d].

As often stated within this Circuit, the New York State Code of Professional Responsibilities only serves as guidelines.  *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 129 n. 2 (2d Cir. 1976) (cited by *Forrest v. Par Pharm., Inc*., 46 F. Supp. 2d 244, 247 (S.D.N.Y. 1999)); *S & S. Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437 (1987) (recognizing that the disciplinary rules are only guidance and not mandatory).  To support a motion for disqualification premised upon the invocation of the advocate-witness rule, the movant must meet a high burden of establishing that the attorney's testimony is vital and necessary at trial and that testimony is substantially prejudicial and adverse to **his** client.  *Forrest v. Par Pharm. Inc*., 46 F. Supp. 2d at 247-48 ("[T]he projected testimony of a lawyer . . . [must be] sufficiently adverse to the factual assertions or account of events offered on behalf of the client." (citation omitted)); *Davin v. JMAM, LLC*, 27 A.D.3d 371 (N.Y.

App. Div. 1ˢᵗ Dep't 2006) (emphasis added).  There are factors, even variables, interjected into the calculus of whether an attorney's testimony is necessary at trial.  For instance, an adequate discussion of the issues by the client may diffuse the necessity of an attorney's testimony, diminishing the demand for disqualification. *Peggy Walz, Inc. v. Liz Wain, Inc.*, 1996 WL 88556, at *4 (S.D.N.Y. Mar. 1, 2006) (disqualifying attorney for reasons other than the advocate-witness rule).

Reflecting upon the guiding principles of DR 5-102, this Court questions whether WVD is the appropriate party to invoke the advocate-witness rule to beget the dismissal of counsel.  As the Discipline Rule makes pellucid, the lawyer may continue to represent the client until such time the client is prejudiced.  Without knowing whether a client is substantially prejudiced, an advocate-witness-driven motion to disqualify is premature.  Without a deposition of the parties to appreciate the orbit of this purported advice of counsel and possible attorney testimony, the motion is underdeveloped. *Occidential Hotels Mgmt B.V. v. Westbrook Allegro, I.L.C.*, 440 F. Supp. 2d 303, 315 (S.D.N.Y. 2006).  WVD, absent intuition, has no factual nexus to substantiate that Hector removed property between December 30, 2006 and May 2007.  Morever, Vivianni and Delacorte already admitted that they removed the Nelsons' property in 2006.  The Nelsons are pleading facts as to the Defendants' conduct in 2006 and what may have occurred in 2007 appears to be irrelevant.  WVD has failed to pinpoint what testimony may be necessary and in what respect Hector's testimony would be prejudicial to the Nelsons. *Balboaa Land Dev. Inc. v. Morris*, 201 A.D.2d 850, 851-52 (N.Y. App. Div. 3d Dep't 1994) (citing *Joliceur v. Am. Tr. Ins. Co.*, 159 A.D.2d 236 (N.Y. App. Div. 1ˢᵗ Dep't 1990) for the proposition that defendant must "explain precisely what testimony is require[d], why it [is] required, and in what respect the testimony of plaintiffs' counsel would be

*-11-*

prejudicial to the plaintiffs if defendant calls counsel as a witness").

We are unpersuaded by WVD's cursory conclusory allegations that Hector would invariably serve a both a witness and advocate. As Hector notes, there are persons other than himself who could give vital depositions as to WVD's contention. Even conferring the most liberal construction upon WVD's Motion to Disqualify, the supporting papers remain speculative at best. *Zutler v. Drivershield Corp.*, 15 A.D.3d 397 (N.Y. App. Div. 2d Dep't 2005). WVD has failed to demonstrate, at this early stage of the litigation, any justification to grant this Motion to Disqualify. *See M.K.B. v. Eggleston*, 414 F. Supp. 2d 469 (S.D.N.Y. 2006); *Strongback Corp. v. N.E.D. Cambridge Ave. Dev. Corp.*, 32 A.D.3d 793 (N.Y. App. Div. 1st Dep't 2006); *Old Saratoga Square P'ship v. Compton*, 19 A.D.3d 823, 825 (N.Y. App. Div. 3d Dep't 2005).

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that the Nelsons' Motion to Amend their Complaint (Dkt. No. 9) is **granted**; and it is further

**ORDERED**, that WVD's Cross Motion to Disqualify Attorney John Hector (Dkt. No. 10) is **denied**; and it is further

**ORDERED**, that the proposed Amended Complaint shall be served and filed on or before **August 15, 2007**; and it is further

**ORDERED,** that the Amended Answer to the Amended Complaint shall be served and filed within twenty days of being served with the Amended Complaint.

**IT IS SO ORDERED**.

Date:   August 7, 2007
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge