**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NANSI NELSON,** individually and as
Executrix of the Estate of Robert H. Nielson,[1]

                 **Plaintiff,**           **1:06-cv-1057**
                                        **(GLS/RFT)**

       **v.**

**ULSTER COUNTY, NEW YORK; LEWIS**
**KIRSCHNER,** Ulster County Treasurer;
**NINA POSTUPACK,** Ulster County Clerk;
**WVD 2906209, LLC; MARK DELACORTE;**
**DANIEL WINN;** and **JOSEPH VIVIANNI,**

                 **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Girvin, Ferlazzo Law Firm | SALVATORE D. FERLAZZO, |
| 20 Corporate Woods Boulevard | ESQ. |
| 2nd Floor | ROBERT F. MANFREDO, ESQ. |
| Albany, NY 12211-2350 | |
| | |
| **FOR THE DEFENDANTS:** | |
| *Defendants Ulster County, Lewis* | |
| *Kirschner, and Nina Postupack* | |
| Maynard, O'Connor Law Firm | MICHAEL CATALINOTTO, SR., |
| Route 9W | ESQ. |
| P.O. Box 180 | ADAM T. MANDELL, ESQ. |
| Saugerties, NY 12477 | |

_____

      [1]Nansi Hoy Nielson and her now-deceased husband, Robert Haakon Nielson, commenced the present action under the names Nansi Nelson and Barry Nelson. (*Compare* 1st Am. Compl., Dkt. No. 14, *with* 2d Am. Compl., Dkt. No. 74.) The court will refer to plaintiff as Nansi Nelson and decedent as Barry Nelson.

*Defendants WVD 2906209, LLC*
*and Mark Delacorte*
Corbally, Gartland Law Firm          JON H. ADAMS, ESQ.
35 Market Street                     KAREN E. HAGSTROM, ESQ.
Poughkeepsie, NY 12601

Joseph Vivianni
Pro se
P.O. Box 1091
Kingston, NY 12402

**Gary L. Sharpe**
**District Court Judge**


## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Nansi Nelson brought this action individually and as executrix

of her late husband Barry Nelson's estate under 42 U.S.C. § 1983, alleging

that defendants Ulster County, Ulster County Treasurer Lewis Kirchner,

and Ulster County Clerk Nina Postupack (collectively Ulster County

defendants) deprived the Nelsons of their real property without due

process.  (*See* 2d Am. Compl. ¶¶ 36-57, Dkt. No. 74.)  The Nelsons also

brought suit against defendant WVD 2906209, LLC, and its members, Mark

Delacorte, Daniel Winn,[2] and Joseph Vivianni (collectively WVD), alleging

_____

[2]The present action was terminated against defendant Daniel Winn pursuant to a
Stipulation and Order of Settlement and Discontinuance.  (*See* Dkt. No 114.)

2

conversion, intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED).  (*See id.* at ¶¶ 58-67.)  WVD and Ulster County defendants filed cross-claims against one another for, among other things, contribution or indemnification.  (*See* Dkt. Nos. 78, 83.)  Additionally, the Nelsons filed a claim and Ulster County defendants filed a counterclaim for attorneys' fees pursuant to 42 U.S.C. § 1988.  (*See* Dkt. Nos. 74, 83.)  Pending are (1) the Nelsons' motion for partial summary judgment on their claims against Ulster County defendants (Dkt. No. 134); (2) Ulster County defendants' cross-motion for summary judgment (Dkt. No. 148); and (3) WVD's cross-motion for summary judgment on the Nelsons' claims (Dkt. Nos. 149, 152).  For the reasons that follow, the Nelsons' and Ulster County defendants' motions for summary judgment are denied, and WVD's summary judgment motion is granted in part and denied in part.

## II. Background

In October 2002, plaintiff Nansi Nelson and her late husband, Barry Nelson, purchased a piece of real property, the Widow Davis Tavern, located at 2906 Route 209, Marbletown, Ulster County, New York.  (*See* Pl. SMF, ¶¶ 6-7, Dkt. No. 134:1.)  The deed for the Tavern was filed in the

Ulster County Clerk's Office on October 10, 2002.  (*See id.* at ¶ 11.)  The deed listed 134 West 58th Street, New York, New York, as the Nelsons' address.  (*See* Pl. Ex. A, Dkt. No. 134:5.)  In purchasing the Tavern, the Nelsons were represented by attorney Jonathan Hoyt, whose name and office address were also listed on the deed.  (*See id.* at ¶¶ 8-10.)  In conjunction with the purchase, the Nelsons filed a Real Property Transfer Report (RP-5217) with the Marbletown Assessor's Office, which listed the Tavern as the Nelsons' address and provided Hoyt's phone number.[3]  (*See* Pl. Ex. B, Dkt. No. 134:6.)

During the 2003 fiscal year, the property taxes due for the Tavern went unpaid.  (*See* Pl. SMF ¶ 32, Dkt. No. 134:1.)  After remaining delinquent for one year, the Tavern property was placed on a delinquent tax list in the Ulster County Clerk's Office.  (*See id.* at ¶ 33.)  From 2003 to 2005, the Town of Marbletown sent annual tax bills to the Nelsons, which included a notice in July and a subsequent notice in September of every taxable year.  (*See* Ulster Resp. SMF ¶ 61, Dkt. No. 148:4.)  Each of these

---

[3]In January 2004, the Nelsons additionally purchased a vacant piece of property located on White Pines Road, Marbletown, New York.  (*See* Pl. SMF ¶ 18, Dkt. No. 134:1.) The deed to this property also listed 134 West 58th Street, New York, New York, as the Nelsons' address.  (*See* Pl. Ex. C, Dkt. No. 134:7.)  In May 2004, the Nelsons filed an RP-5217 for the White Pines property, wherein they listed 120 West 58th Street, Apartment 2B, New York, New York, as their address.  (*See* Pl. Ex. D, Dkt. No. 134:8.)

biannual notices expressly stated, among other things, that "[c]ontinued failure to pay will eventually result in the loss of the property." (*Id.*)  And on October 12, 2005, defendants Lewis Kirschner and Nina Postupack mailed a notice by certified mail to the Tavern property address notifying the Nelsons that the property taxes were delinquent and that Ulster County was commencing a foreclosure proceeding on the Tavern property.  (*See* Pl. Ex. F, Dkt. No. 134:10.)  This notice of foreclosure specified the amount of unpaid taxes due and the means of repayment, described the nature and effects of the foreclosure proceeding, and discussed the rights of interested parties.  (*See id.*)  In addition, the notification set February 10, 2006, as the last day to redeem the property, after which title would be transferred to Ulster County by way of a court judgment.[4]  (*See id.*)

The October 12, 2005 notice of foreclosure was returned to the Ulster County Treasurer's Office as "not deliverable as addressed - unable to forward." (*See* Pl. SMF ¶ 39, Dkt. No. 134:1; *see also* Ulster Resp. SMF ¶¶ 39, 67, Dkt. No. 148:4.)  Following receipt of the undeliverable notification,

---

[4]All parties agree that Ulster County had a policy that allows delinquent property owners to redeem their property after the transfer date listed on the foreclosure notification.  And while the Nelsons claim that they were never notified of this policy, (*see* Pl. SMF ¶ 38, Dkt. No. 134:1), Ulster County defendants point out, and the court agrees, that the redemption policy, including this post-foreclosure buy-back policy, was a matter of public record, (*see* Ulster Resp. SMF ¶ 38, Dkt. No. 148:4; *see also* Pl. Ex. G, Stauble Dep. at 86, Dkt. No. 134:11).

Ulster County did not mail a copy of the notification to either the 134 West 58th Street or 120 West 58th Street address.  (*See* Pl. SMF ¶¶ 42-43, Dkt. No. 134:1.)  Nor did Ulster County notify the Nelsons' counsel, Jonathan Hoyt, of the foreclosure proceeding.  (*See id.* at ¶ 45.)  Prior to the foreclosure, Ulster County did not post a notice of foreclosure on the Tavern property, send a subsequent notification by regular mail to the Tavern address, or attempt to contact the Nelsons by phone.  (*See id.* at ¶¶ 44, 47-48.)

Ulster County published the notice of foreclosure in the Kingston Daily Freeman newspaper on October 12, November 4, and December 2, 2005, and in the Ulster County Townsman on October 20, November 3, and December 1, 2005.[5]  (*See* Ulster Resp. SMF ¶ 62, Dkt. No. 148:4.)  In addition, Ulster County checked the Ulster County Surrogate's Court for

--------

[5]While disputed by the Nelsons, Ulster County defendants allege that Diane Stauble, as Ulster County Senior Public Auction Coordinator in the Finance Department, checked (1) the New York State Real Property Assessment screen to find the most up-to-date address of the Tavern's owner, which listed the Tavern address; (2) the Finance Department's file on the Tavern property, which did not provide any additional information; and (3) the paperwork from the Marbletown Building Inspector's inspection of the property conducted prior to the County's taking title, which provided no additional information.  (*See* Ulster Resp. SMF ¶¶ 40, 68-70, Dkt. No. 148:4.)  Further, Stauble's assistant, Stephanie Seminiti, allegedly contacted the Ulster County Commissioner of Highways and Bridges—who previously worked for the Marbletown Highway Department—to inquire whether he had any additional information, which he did not.  (*See id.* at ¶ 40.)  Ulster County defendants also allege that Stauble had no knowledge of the Nelsons' White Pines property and that those property records would not have been within the scope of her review of records since that property was not part of the foreclosure process.  (*See id.* at ¶ 23.)

6

any death notice of the Nelsons.  (*See id.* at ¶ 76.)

Following the Nelsons' failure to redeem, and the consequent foreclosure on the Tavern property, Ulster County published a public auction brochure in the Kingston Daily Freeman on March 31, 2006, which included a listing for the Tavern property.  (*See id.*)  During the weeks leading up to the public auction, photographs of the Tavern property were posted in the Ulster County Office Building.  (*See id.* at ¶ 65.)  The Ulster County Real Property Tax Service Agency sent notices by regular mail to owners of properties adjoining the Tavern to advise them of the proposed auction.  (*See id.* at ¶ 66.)  After the foreclosure and transfer of title to Ulster County, Hoyt, the Nelsons' attorney, learned of the foreclosure and public auction and attempted to contact the Nelsons without success.  (*See id.* at ¶¶ 77-80.)  On April 21, 2006, the Tavern property was offered in a tax foreclosure public auction, which Hoyt attended.  (*See id.* at ¶ 62, 80.) And on May 24, 2006, Ulster County transferred title and possession of the Tavern property to defendant WVD 2906209, LLC, for $152,000.00.  (*See* Pl. SMF ¶ 51, Dkt. No. 134:1.)  At no point prior to the sale did Hoyt contact an Ulster County official on the Nelsons' behalf.  (*See* Ulster Resp. SMF ¶ 81, Dkt. No. 148:4.)

On June 12, 2006, WVD filed an action against the Nelsons in the New York State Supreme Court, Ulster County, to quiet title to the Tavern property.  (*See* Notice of Removal, Dkt. No. 1.)  On August 31, 2006, the Nelsons, as Pennsylvania residents, removed this action to the United States District Court for the Northern District of New York based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[6]  (*See id.*).  The Nelsons concurrently filed a § 1983 action in this court against Ulster County defendants for allegedly depriving them of their property without due process by failing to provide adequate notice of the foreclosure and tax sale proceedings.[7]  (*See* 2d Am. Compl. ¶¶ 36-52, Dkt. No. 74.)  In addition, the Nelsons sought a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 to invalidate the tax sale and reconvey the Tavern property to the Nelsons.  (*See id.* at ¶¶ 50-51.)  The Nelsons also asserted claims against WVD and its members, Mark Delacorte and Joseph Vivianni, for

---

[6]None of the parties dispute that New York law controls the conversion, IIED, and NIED claims since the property in question is located and the alleged actions all occurred in New York State.  Accordingly, the court will apply New York State substantive law and federal procedural law to those claims.  *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *see also Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

[7]In the event they are a prevailing party on the § 1983 claim against Ulster County defendants, the Nelsons sought attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  (*See* 2d Am. Compl. ¶¶ 52, 57, Dkt. No. 74.)

conversion, IIED, and NIED, and demanded actual, special, and punitive damages.  (*See id.*)  On January 23, 2007, WVD's action to quiet title and the Nelsons' action against the Ulster County and WVD defendants were consolidated.  (*See* Dkt. No. 5.)

In their answer to the Nelsons' second amended complaint, WVD brought cross-claims against Ulster County, first, for repayment of all sums paid for the Tavern property with interest if the sale is invalidated, and second, for contribution or indemnification for any alleged removal or conversion of the Nelsons' personal property.  (*See* WVD Answer ¶¶ 19-21, Dkt. No. 78.)  In response, Ulster County defendants filed a similar cross-claim against WVD for contribution or indemnification.  (*See* Ulster Answer ¶¶ 19-20, Dkt. No. 83.)  Additionally, Ulster County defendants filed a counterclaim against the Nelsons for attorneys' fees pursuant to 42 U.S.C. § 1988.[8]  (*See id.* at ¶¶ 21-22.)

On June 9, 2009, the Nelsons moved against Ulster County

---

[8]WVD also filed a counterclaim for attorneys' fees against the Nelsons under 42 U.S.C. § 1988.  (*See* WVD Answer to 1st Am. Compl. ¶¶ 13-14, Dkt. No. 15.)  However, WVD appears to have dropped this claim as it is not asserted in its answer to the Nelsons' second amended complaint.  (*See* Dkt. No. 78.)  Regardless, upon review of the original complaint and the first and second amended complaints, there are no allegations that WVD deprived the Nelsons' of their due process rights in violation of § 1983.  (*See* Compl., No. 06-cv-1058, Dkt. No. 1; 1st Am. Compl., Dkt. No. 14; 2d Am. Compl., Dkt. No. 74.)  Accordingly, WVD is not entitled to attorneys' fees under § 1988.  *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989); *see also Wilder v. Bernstein*, 965 F.2d 1196, 1205 (2d Cir. 1992).

defendants for partial summary judgment on the § 1983 and declaratory judgment claims. (*See* Dkt. No. 134). On July 20, 2009, Ulster County defendants responded with a cross-motion for summary judgment, contending that notice of the foreclosure and tax sale proceeding was consistent with due process requirements and that municipal liability should not attach.[9] (*See* Dkt. No. 148.) WVD also cross-moved for summary judgment on the Nelsons' conversion, IIED, and NIED claims. (*See* Dkt. Nos. 149, 152.)

### III. **Standard of Review**

The standard for the grant of summary judgment is well established, and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp.2d 192, 194-95 (N.D.N.Y. 2007).

### IV. **Discussion**

A. **Section 1983 and Due Process**

---

[9]While both the Ulster County and WVD defendants present arguments regarding a potential claim of conversion directed against Ulster County defendants, upon review of the Nelsons' second amended complaint and in light of the Nelsons' admissions, the court is unable to find a claim for conversion levied against Ulster County defendants. (*See generally* 2d Am. Compl., Dkt. No. 74; *see also* Ulster Resp. SMF ¶ 85, Dkt. No. 148:4; Pl. Resp. SMF ¶ 85, Dkt. No. 156:17.) Still, in addition to seeking damages generally, the Nelsons seek a declaration that Ulster County defendants reconvey "all personal property" to them. (2d Am. Compl. ¶ 51, Dkt. No. 74.)

10

1.    **Notice**

The Due Process Clause of the Fourteenth Amendment prohibits

state governments from depriving a person of property without "due

process of law."  *See Dusenbery v. United States*, 534 U.S. 161, 168

(2002).  "In order to satisfy the requirements of due process, a property

owner must be given notice of foreclosure proceedings before foreclosure

can occur."  *Akey v. Clinton County, N.Y.*, 375 F.3d 231, 235.  However,

"[d]ue process does not require that a property owner receive actual notice

before the government may take his property."  *Jones v. Flowers*, 547 U.S.

220, 226 (2006) (citation omitted).  Rather, notice must be "reasonably

calculated, under all the circumstances, to apprise interested parties of the

pendency of the action."  *Mullane v. Cent. Hanover Bank*, 339 U.S. 306,

314 (1950) (citation omitted).  "The means employed must be such as one

desirous of actually informing the absentee might reasonably adopt to

accomplish it."  *Id.* at 315.  Thus, "[t]he proper inquiry is whether the state

acted reasonably in selecting means likely to inform the persons affected,"

*Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988), which is

assessed ex ante, *see Jones*, 547 U.S. at 231.

While notice by mail is constitutionally sufficient when the

11

government hears nothing back to indicate notice was not received, the government is required "to take additional reasonable steps to notify a property owner when notice of a tax sale is returned undelivered," as long as additional steps are available and practicable. *Jones*, 547 U.S. at 225-26; *see also Luessenhop v. Clinton County, N.Y.*, 466 F.3d 259, 271 (2d Cir. 2006).  Where the owner and her place of residence are known or "at hand," the government must at least resort to notice by mail to the record addresses.  *Mullane*, 339 U.S. at 317-18.  When a notice is returned as undeliverable, "the tax district should conduct a reasonable search of the public record."  *Kennedy v. Mossafa*, 100 N.Y.2d 1, 9 (N.Y. 2003). However, the government is not generally required to search for the property owner's address on the internet, in the telephone book, or in other government records, including voting records or motor vehicle records, particularly where less burdensome steps are available and practicable. *See id.*; *see also Jones*, 547 U.S. at 236.  More importantly, such steps are unwarranted where the property owner's address is not actually available through a search of the public records.  *See Kennedy*, 100 N.Y.2d at 10 (citing *Congregation Yetev Lev D'Satmar v. County of Sullivan*, 59 N.Y.2d 418, 425 (N.Y. 1983)); *see also Tobia v. Town of Rockland*, 106 A.D.2d

827, 829 (3d Dep't 1984) (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)).

If certified mail is utilized and the property owner has moved or is not an occupant, "[f]ollowing up with regular mail might also increase the chances of actual notice" because the certified letter cannot be left like regular mail. *Jones*, 547 U.S. at 235. The government's notice obligations are not mitigated by a property owner's failure to provide an updated mailing address or by the property owner's knowledge of delinquent taxes and the possible consequences. *See Jones*, 547 U.S. at 232-33 (citing *Adams*, 462 U.S. at 799-800). Nor is the government excused if the property owner had knowledge that her property "may become subject to government taking when taxes are not paid." *Id.* at 232; *see also Adams*, 462 U.S. at 800 ("[A property owner's] knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending."). Further, while "publication or posting affords an additional measure of notification," especially where interested persons are "missing or unknown," *Mullane*, 339 U.S. at 316-17, such measures alone cannot save an otherwise constitutionally inadequate notification. *See Luessenhop*, 466 F.3d at 270 & n.6.

"If a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended." *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) (citations omitted). Accordingly, "[a]ctual notice is an affirmative defense to a procedural due process claim" which the government must prove. *Brody v. Vill. of Port Chester*, 509 F. Supp.2d 269, 279 (S.D.N.Y. 2007); *see also Farbotko v. Clinton County, N.Y.*, 168 F. Supp.2d 31, 40 (N.D.N.Y. 2001) (citation omitted). Where the property owner is in privity with a third party, the third party's actual knowledge can be imputed to the property owner. *See Bender v. City of Rochester, N.Y.*, 765 F.2d 7, 12 (2d Cir. 1985) (distinguishing *Adams* and finding that notice of foreclosure given to the administrator of the decedent's estate could be imputed to the decedent's beneficiaries since the administrator was in privity with the beneficiaries and owed them a fiduciary duty to inform them of foreclosure proceedings).

Here, it is undisputed that Ulster County sent by certified mail a notice of foreclosure to the Tavern property and published the notice of foreclosure in two Ulster County newspapers. Nonetheless, in addition to questions that remain as to what steps were taken to notify the Nelsons, it

is unclear whether Ulster County defendants' failure to mail the notice to the Nelsons' record addresses was erroneous or whether such a mailing would have been futile and thereby excusable.  Moreover, there remains a dispute of fact as to whether the Nelsons received actual notice of the foreclosure and tax sale.  Ulster County defendants have not demonstrated as a matter of law that the Nelsons retained Hoyt as their attorney beyond the October 2002 closing and matters immediately relating to that closing. The fact that Hoyt attempted to reach the Nelsons after learning that their property had been foreclosed upon is not dispositive of any continuing representation or ongoing privity.  Nor does the fact that Hoyt represented the Nelsons in the early stages of the present matter establish the existence of a continuous relationship.  Moreover, in addition to the fact that the Nelsons dispute any continuing representation, there has been no showing that Hoyt was aware of the foreclosure before it occurred.  Rather, Ulster County defendants have merely demonstrated that Hoyt received notice of the tax sale and foreclosure after the foreclosure occurred.

Ultimately, the court is unable to conclude as a matter of law that Ulster County defendants took steps that were reasonably calculated under the circumstances to apprise the Nelsons of the pendency of the

15

foreclosure action.  Therefore, the parties' respective motions for summary

judgment on the Nelsons' due process claim are denied.

## 2.    Municipal Liability

A municipality may be liable under § 1983 only "when execution of a

government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts

the injury."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,

694 (1978).  To establish a municipal policy or custom, a plaintiff must

allege:

> (1) the existence of a formal policy officially endorsed by the
> municipality; (2) actions taken or decisions made by municipal
> officials with final decision making authority, which caused the
> alleged violation of plaintiff's civil rights; (3) a practice so
> persistent and widespread that it constitutes a custom of which
> constructive knowledge can be implied on the part of the
> policymaking officials; or (4) a failure by policymakers to
> properly train or supervise their subordinates, amounting to
> "deliberate indifference" to the rights of those who come in
> contact with the municipal employees.

*Prowisor v. Bon-Ton, Inc.*, 426 F. Supp.2d 165, 174 (S.D.N.Y. 2006)

(citation omitted).  However, a municipality and its supervisory officials may

not be held liable under § 1983 based on the theory of respondeat

superior.  *See Monell*, 436 U.S. 658, 691 (1978).  Moreover, "a single

16

incident alleged in a complaint, especially if it involved only actors below

the policy-making level, does not suffice to show a municipal policy."

*Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see*

*also City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  Still, a policy may

be inferred from circumstantial proof that the municipality displayed a

deliberate indifference to the constitutional rights of persons within its

jurisdiction by failing to train its employees or repeatedly failing to make

any meaningful investigation into complaints of constitutional violations

after receiving notice.  *See Ricciuti*, 941 F.2d at 123 (citations omitted).

For purposes of the present motion, the Nelsons have provided

sufficient evidence to demonstrate a genuine issue of material fact

regarding the personal involvement of defendants Kirschner and

Postupack.  And as to Ulster County's liability, the evidence is such that a

reasonable jury could find that Ulster County had a constitutionally deficient

policy, custom, or practice that caused the Nelsons to be deprived of their

property without due process of law.  Therefore, the court denies the

parties' motion for summary judgment insofar as the liability of defendants

Ulster County, Kirschner, and Postupack is concerned.

**3.    Loss of Personal Property**

It is well established that "principles of causation borrowed from tort law are relevant to civil rights actions brought under section 1983." *Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1071 (2d Cir. 1997) (internal quotation marks and citations omitted). Accordingly, while "a superseding cause, as traditionally understood in common law tort doctrine, will relieve a defendant of liability," *id.* (citation omitted), a defendant sued under § 1983 is "responsible for the natural consequences of his actions," *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (internal quotation marks and citation omitted). Thus, "an actor may be held liable for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." *Warner*, 115 F.3d at 1071 (internal quotation marks and citation omitted); *see also Derdiarian v. Felix Contracting Corp.*, 51 N.Y. 2d 308, 315 (N.Y. 1980) ("[L]iability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence." (citation omitted)). The precise intervening act need not be foreseen, but need only be "within the general category of reasonably anticipated consequences of the defendant's action." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 473 (2d Cir. 1995) "Conversely, if the intervening act is extraordinary under the

18

circumstances, not foreseeable in the normal course of events, or

independent of or far removed from defendant's conduct, it may well be a

superseding act which breaks the causal nexus." *Id.* (internal quotation

marks and citation omitted); *see also Cullen v. BMW of N. Am., Inc.*, 691

F.2d 1097, 1101 (2d Cir. 1982) ("[A]n intervening act, tortious or criminal,

will ordinarily insulate a negligent defendant from liability when the

subsequent act could not have been reasonably anticipated by the

defendant." (citation omitted)).  Like questions of negligence, questions of

foreseeability and normality are typically for the jury to resolve.  *See*

*Derdiarian*, 51 N.Y.2d at 315.

The court is unable to grant summary judgment in favor of either

party on the issue of Ulster County defendants' liability regarding the

personal property allegedly contained within the Tavern property.  In light of

the underlying question as to whether Ulster County defendants violated

the Nelsons' due process rights, there remain questions of material fact as

to whether and to what extent Ulster County had possession of the items

contained within the property.  Additionally, the question of whether the

destruction or loss of the Nelsons' personal property was a foreseeable

consequence of Ulster County defendants' actions or whether there was a

sufficient superseding act—for instance, WVD's alleged acts of conversion or an unnamed third party's criminal misconduct—is best left for a factfinder to resolve.  Accordingly, the parties' rival motions for summary judgment on this issue are denied.

## B.   Conversion

Under New York law, "[c]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance to a superior possessory right of another in the property."  *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53-54 (2d Cir. 1993) (per curiam) (internal quotation marks and citation omitted).  Essentially, the elements of conversion are: "(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[;] (3) the rightful owner makes a demand for the property, and (4) the demand for return is refused."  *Seanto Exps. v. United Arab Agencies*, 137 F. Supp.2d 445, 451 (S.D.N.Y. 2001) (internal quotation marks and citations omitted).  Where possession of the property is lawfully authorized, "a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property."  *Johnson v. Gumer*, 94 A.D.2d

955, 955 (4th Dep't 1983) (citing *MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.*, 193 N.Y. 92, 101 (N.Y. 1908)); *see, e.g.*, *Schwartz*, 984 F.2d at 54 (affirming directed verdict on conversion claim where plaintiff presented no evidence of demand).  A demand is not required, however, where "the lawful custodian of property commits an overt and positive act of conversion by an unlawful sale or disposition of the [property]." *MacDonnell*, 193 N.Y. at 101.

Here, there is an abundance of disputed facts that are material to the Nelsons' claim of conversion against WVD.  Specifically, while WVD contends that the Nelsons neither made an adequate demand for the personal property nor specifically identified the property that has been converted, the Nelsons assert that they made both verbal and written demands for their personal property and provided WVD with a "Master List" inventory of each item that was stored at the Tavern property prior to the foreclosure.  (*Compare* WVD SMF ¶¶ 23-27, Dkt. No. 149:3, *with* Pl. Resp. SMF ¶¶ 23-27, Dkt. No. 156:18.)  Although WVD correctly argues that the burden is on the Nelsons to specifically identify and prove which items were converted, the court is satisfied that the Nelsons have sufficiently identified the property at issue for purposes of the pending motion.  In

addition, the parties ardently dispute the nature, quantity, and quality of the items that were disposed of by WVD and those that were destroyed or stolen by unnamed third parties.  And relatedly, the parties disagree about who was in actual and constructive possession of the premises when the personal property was disposed of, damaged, destroyed, or stolen. Therefore, in light of these disputed matters, the court denies the parties' motions for summary judgment on the Nelsons' claim of conversion against WVD.

**C.    Intentional Infliction of Emotional Distress**

Under New York law, the tort of IIED has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (N.Y. 1993)).  The elements of an IIED are "rigorous, and difficult to satisfy" because the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 122 (internal quotation marks and citation omitted).

22

Accordingly, absent a "deliberate and malicious campaign of harassment or intimidation," *Nader v. Gen. Motors Corp.*, 25 N.Y.2d 560, 569 (N.Y. 1970), an IIED claim is susceptible to a determination as a matter of law.  *See Howell*, 81 N.Y.2d at 121 ("The first element ... serves the ... function of filtering out petty and trivial complaints that do not belong in court ...."). Moreover, where the conduct upon which the IIED claim is based "falls well within the ambit of other traditional tort liability," there can be no liability for IIED.  *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (N.Y. 1978); *see also Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 263 (1st Dep't 1995).

The Nelsons' IIED claim must fail as a matter of law for a number of reasons.  First, their IIED claim is generally barred since it is based on actions that clearly and indisputably fall within the ambit of another form of traditional tort liability, namely that of conversion.  *See Lenhoff v. Getty*, No. 97 Civ. 9458, 2000 WL 977900, at *9 (S.D.N.Y. July 17, 2000) ("The loss or damage of property is properly covered under [a] conversion claim."). Second, the Nelsons have failed to demonstrate any basis upon which a reasonable jury could find either of the first two elements of an IIED claim. Specifically, there is no evidence suggesting that any of the defendants engaged in extreme and outrageous conduct or that they acted with an

intent to cause severe emotional distress.  Thus, due to the complete absence of any evidence supporting a claim for IIED, the court grants WVD's motion for summary judgment on the Nelsons' IIED cause of action.

## D.   **Negligent Infliction of Emotional Distress**

New York State law provides a cause of action for NIED where the defendant breaches a duty owed to the plaintiff and, among other things, "unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety."  *Sheila C. v. Povich*, 11 A.D.3d 120, 130 (1st Dep't 2004) (citation omitted); *see also Bovsun v. Sanperi*, 61 N.Y.2d 219, 230-31 (N.Y. 1984); *Tobin v. Grossman*, 24 N.Y.2d 609, 618-19 (N.Y. 1969); *see, e.g.*, *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (categorizing two grounds for NIED into "bystander theory" and "direct duty theory").

Compounding the inadequacy of the Nelsons' pleadings regarding their NIED claim, the Nelsons have failed to proffer any evidence that would enable a reasonable jury to find that WVD unreasonably endangered their physical safety or caused them to fear for their safety.  Accordingly, the court grants WVD's motion for summary judgment on the NIED cause of action.

24

**E.     Attorneys' Fees**

Section 1988 permits the court, in its discretion, to award reasonable attorneys' fees to a "prevailing party" in any action or proceeding brought to enforce the provisions of 42 U.S.C. § 1983.  *See* 42 U.S.C. § 1988(b); *see also Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009).  A "prevailing party" is one "who has established his entitlement to some relief on the merits of his claims ...."  *Hanrahan v. Hampton*, 446 U.S. 754, 757 (1980); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).  Here, as neither the Nelsons nor Ulster County defendants have demonstrated an entitlement to any relief at this stage, an award of attorneys' fees would be premature.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Nelsons' motion for partial summary judgment (Dkt. No. 134) is **DENIED**; and it is further

**ORDERED** that Ulster County defendants' cross-motion for summary judgment (Dkt. No. 148) is **DENIED**; and it is further

**ORDERED** that WVD's cross-motion for summary judgment (Dkt. Nos. 149, 152) is **GRANTED** insofar as the Nelsons' IIED and NIED claim

25

are **DISMISSED**; and it is further

ORDERED that WVD's cross-motion for summary judgment is

**DENIED** as to the Nelsons' conversion claim; and it is further

ORDERED that the parties' requests for attorneys' fees are **DENIED**

at this juncture; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 26, 2010
Albany, New York

_____
United States District Court Judge

26